UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIM E. FISCHER,

    Plaintiff,

vs.                                                           Case No. 8:04-cv-1412-T-MSS

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____/

## **ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying claims for disability, disability insurance benefits, and supplemental security income under the Act.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

I.   Background

    A.   Procedural History

Plaintiff protectively filed applications for disability and disability insurance benefits and supplemental security income on September 19, 2001. (T. 55-57, 402-05.) Plaintiff alleged an onset of disability on August 17, 2001, due to diabetes, diabetic neuropathy, dizziness, a B-12 deficiency, muscle weakness, manic depression and anxiety. (T. 67.) Her applications were denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on September 9, 2003, before Administrative Law Judge Victor L. Cruz (hereinafter referred to as the "ALJ"). (T. 415-447.) In a decision dated November 17, 2003, the ALJ denied Plaintiff's claims for benefits. (T. 13-21.) The Appeals Council denied review of the decision on May 28, 2004. (T. 4-5.) This action for judicial review ensued.

    B.   Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ's decision. By way of summary, Plaintiff complained of diabetes, dizziness, blurred vision, joint pain, anxiety, and depression.

At the hearing, Plaintiff presented the ALJ with medical records from Plaintiff's treating and examining physicians. After considering the evidence, the ALJ found that although Plaintiff suffered from severe impairments including non-insulin dependent diabetes mellitus, early signs of diabetic neuropathy, and mixed features of affective disorder with borderline features, she did not have an impairment or

combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (T. 19-20.)

The ALJ found Plaintiff's allegations of incapacitating pain and disabling impairments were not fully credible. (T. 18, 20.) The ALJ determined Plaintiff had the residual functional capacity to perform simple, repetitive work-related activities with pushing, pulling, lifting, and/or carrying up to 20 pounds occasionally and up to ten pounds frequently; sitting, standing and/or walking about six hours each during an eight-hour workday; occasional balancing, frequent stooping, kneeling, crouching, and/or crawling and reaching; with avoidance of exposure to unprotected heights, temperature extremes and other known hazards. The ALJ additionally found that Plaintiff needed a job requiring only minimal interaction with co-workers and the general public. Thus, the ALJ concluded Plaintiff retained the residual functional capacity to perform a wide range of light work. (T.18.) After eliciting the testimony of a vocational expert, the ALJ determined that Plaintiff's residual functional capacity, as limited, prevented Plaintiff from performing her past relevant work. The ALJ, however, found the existence of a significant number of jobs in the national economy that Plaintiff could perform despite her limitations including file clerk, mail clerk, and copy machine operator. The ALJ therefore concluded Plaintiff was not disabled under the Act. (T. 18-20.)

Plaintiff contends that the decision of the ALJ must be reversed and remanded for further hearing due to the following reasons: (1) the ALJ erred in failing to give

3

proper weight to the opinion of Plaintiff's treating physician; (2) the ALJ erred in finding Plaintiff's subjective complaints not fully credible.

For the reasons that follow, the Undersigned REVERSES the decision of the Commissioner and REMANDS this case for an award of benefits.

II.     Standard of Review

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law *de novo*.  See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993).  If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard.  McDaniel v. Bowen, 800 F.2d 1026, 1029-30 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is

required.  Jamison v. Bowen, 814 F.2d 585 (11th Cir. 1987).

III.   Discussion

   A.   WHETHER THE ALJ ERRED IN FAILING TO GIVE GREAT WEIGHT TO THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN, DR. DUQUE

Plaintiff first contends that the ALJ erred in crediting the opinion of a State Agency Medical Consultant over that of Plaintiff's treating physician, Dr. Duque. Plaintiff is correct.

The controlling body of law on the priority of medical evidence provides that the treating physician's opinion may not be rejected absent good cause to the contrary.  Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).  Furthermore, that good cause finding must be set forth expressly on the face of the ALJ's opinion. "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner."  Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).  The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision.  Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb, 847 F.2d at 703 ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.")  Further, the good cause

5

required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician.  Johns v. Bowen, 821 F.2d 551 (11th Cir.1987).  This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

On March 29, 2002, Dr. Duque completed a psychiatric documentation form with regard to Plaintiff.  Dr. Duque opined that Plaintiff had an affective disorder, specifically depressive syndrome characterized by the following: (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt or worthlessness; and (3) difficulty concentrating or thinking.  Dr. Duque noted that there was insufficient evidence as to manic syndrome and bipolar syndrome.  Dr. Duque concluded that Plaintiff had moderate restrictions in activities of daily living and social functioning; constant deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and repeated episodes of deterioration or decomposition in work or work-like settings.  (T. 324-329.)

The ALJ acknowledged Dr. Duque's opinion with regard to Plaintiff's functional limitations and the degree of those limitations.  The ALJ, however, found a State Agency physician's opinion to be well supported by the record when viewed in its

entirety, and not inconsistent with the other substantial evidence, and therefore entitled to greater weight.  (T. 17.)

Specifically, the ALJ pointed to the mental residual functional capacity assessment by a State Agency medical consultant, Dr. Prickett, dated January 4, 2002.  (T. 17, citing Exh. 11F.)  In that assessment, Dr. Prickett noted that, with regard to sustained concentration and persistence, Plaintiff was moderately limited in the abilities to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or proximity to others without being distracted by them; and (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (T. 318-19.)  With regard to social interaction and adaptation, Dr. Prickett opined that Plaintiff was moderately limited in the abilities to: (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; (3) respond appropriately to changes in the work setting; and (4) set realistic goals or make plans independently of others. (T. 319.)

Ultimately, Dr. Prickett, like Dr. Duque, opined that Plaintiff had moderate restrictions in activities of daily living and social functioning.  Dr. Prickett's opinion differed from that of Dr. Duque in that Dr. Prickett found that Plaintiff had moderate

difficulties in maintaining concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and one or two episodes of decomposition, each of extended duration. (T. 314.) Dr. Prickett concluded that Plaintiff was able to understand, remember and carry out simple instructions and make simple decisions and perform routine tasks that are within her physical limitations. Additionally, Plaintiff could concentrate on simple tasks. Dr. Prickett opined that Plaintiff would need a supportive supervisor and work setting and, while she could respond to simple changes, she may need assistance with job placement and support. (T. 320.)

Plaintiff argues that the ALJ should have given more weight to Dr. Duque's opinion than to that of the State Agency physician. Plaintiff further argues that Dr. Duque's findings are consistent with a listing-level mental impairment and, therefore, Plaintiff should be found disabled. The Commissioner responds that Dr. Duque was nothing more one than a one-time examining physician, and, as such, his opinion is not entitled to deference.

A review of the administrative record shows that Dr. Duque examined Plaintiff at least seven times over a period of approximately 16 months, and, as such, he is not a one-time examining physician as argued by the Commissioner. Specifically, the records demonstrate that Dr. Duque began treating Plaintiff on October 30, 2001, at which time Plaintiff was very anxious, self-violative, depressed, tearful and apprehensive. (T. 378.) She had decreased concentration and her insight was limited. Dr. Duque noted that Plaintiff was preoccupied with her illness. Initially, Dr.

Duque diagnosed major depression, recurrent episode. Additionally, he wanted to rule out Bipolar Disorder. He estimated Plaintiff's Global Assessment of Functioning (GAF) to be 40-50.[1] He recommended individual psychotherapy and prescribed Effexor-XR. (T. 183-184, 379.)

At a follow-up on November 29, 2001, Plaintiff complained of increased anxiety. Her mood was stable. Dr. Duque diagnosed Bipolar II Disorder. (T. 182, 377.) On February 22, 2002, Dr. Duque indicated that Plaintiff continued to be depressed, anxious and tearful. Dr. Duque noted that Plaintiff needed to resolve interpersonal issues. He increased the dosages of Xanax and Effexor. (T. 172, 376.) On March 21, 2002, Plaintiff reported that her headaches were relieved overall, but that she had difficulty being around crowds and dealing with the public. She also continued to have impaired sleep. (T. 171, 374.) On June 20, 2002, Plaintiff was doing well and her mood/affect were stable. Dr. Duque indicated her GAF was 70-80.[2] (T. 373.) On September 26, 2002, Plaintiff reported that she was not taking her medication as directed. Her mood and affect were stable, however.

---

[1] A GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000) (DSM-IV).

[2] A GAF of 71-80 indicates "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating are family argument); no more than slight impairment in social, occupational, or school functioning (temporarily falling behind in school work)." Id.

Her current GAF was 70. (T. 370.)[3] On February 11, 2003, Plaintiff was doing fairly well and her mood and affect were still stable. Dr. Duque noted that Plaintiff's GAF was 70. (T. 367.)

Notably, during the time that Plaintiff was being treated by Dr. Duque, she was also participating in individual psychotherapy with a licensed medical health counselor at the direction of Dr. Duque. (T. 380-94.) Those treatment notes indicated that on October 30, 2001, Dr. Duque questioned whether Plaintiff might have borderline personality characteristics due to her behavior in her session with him. (T. 394.) Plaintiff reported that she did not like to be around people. LMHC Barbara Fecht noted that Plaintiff had little insight into her feelings and poor coping skills. (Id.)

On November 26, 2001, the counselor noted that Plaintiff was anxious and her affect congruent. Plaintiff had a difficult time concentrating and focusing. (T. 393.) On December 27, 2001, the counselor noted that Plaintiff was still highly resistant to leaving her home due to her low tolerance for crowds. The counselor estimated Plaintiff's GAF to be 55.[4] (T. 392.) On February 5, 2002, Plaintiff's mood was

---

[3] A GAF of 61-70 indicates mild symptoms "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

[4] A GAF 51-50 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id.

dysphoric and her affect bland. She was still in need of insight into her thoughts and feelings. (T. 391.)

On November 3, 2002, Plaintiff began therapy with a new counselor, Linda Mitchell. At that time, Plaintiff complained of mood swings and an increase in panic attacks. Plaintiff's GAF was 54. (T. 389.) Plaintiff began attending group sessions in March 2003. (T. 385.) In April 2003, Plaintiff's mood was stable. (T. 381.)

Nowhere in the ALJ's written decision does the ALJ acknowledge that Dr. Duque is a treating physician. Moreover, while the ALJ appears to reject Dr. Duque's opinion, he does not provide any reason for doing so. To the extent that the ALJ relied on the report of the non-examining state agency physician who found that Plaintiff had the mental residual functional capacity to perform simple, repetitive and routine work tasks (T. 318-323), this report does not constitute substantial evidence for rejecting Dr. Duque's opinion. See Lamb, 847 F.2d at 703 (citing Spencer o/b/o Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir. 1985) and Strickland v. Harris, 615 F.2d 1103 (5th Cir. 1980)). Furthermore, the requisite good cause for rejecting the opinion of a treating physician is not provided by the report of a contradicting, non-examining physician. See Johns v. Bowen, 821 F.2d 551 (11th Cir. 1987). Additionally, Dr. Prickett did not have the benefit of Dr. Duque's records or his assessment of Plaintiff's mental functional limitations. In this regard, Dr. Prickett completed the mental residual functional capacity assessment on January 4, 2002. In that assessment, he noted that Plaintiff was last seen by her treating physician on

11

November 29, 2001. (T. 323.) Dr. Duque's assessment of Plaintiff is dated March 29, 2002, nearly four months later.

Where the medical evidence does not conclusively counter the treating physician's opinion and no other good cause exists to reject it, the ALJ must afford the treating physician's opinion significant weight in determining whether a claimant is disabled. See Schorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). In this case, as there was a diagnosis of severe mental conditions and the limitations listed in Dr. Duque's mental residual functional capacity assessment are consistent with those medical conditions, and because no other treating or examining source contested the treating physician's conclusions, the Undersigned finds that the ALJ was required to accord great weight to the conclusions of Dr. Duque. Where the Commissioner ignores or fails properly to refute the treating physician's opinion, it will be accepted as true as a matter of law. MacGregor, 786 F.2d at 1058.

Dr. Duque essentially opined that Plaintiff meets Listing 12.04 and, therefore, is unable to work. In this regard, Listing 12.04, which relates to mental disorders, sets forth a two-part test. 20 C.F.R. pt. 404, Subpt. P, Appendix 1, § 12.04. Dr. Duque found that Plaintiff suffered from an affective disorder characterized by anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with changes in weight, sleep disturbance, decreased energy, feelings or guilt or worthlessness and difficulty concentrating or thinking. (T. 324, 326.) Plaintiff, thus, meets the "A" criteria of Listing 12.04. See 20 C.F.R. pt. 404, Subpt. P, Appendix

1, § 12.04. A determination of marked limitations in two of the following areas is required to meet the "B" criteria of the Listing: (1) restrictions in daily activities; (2) difficulties in maintaining social functioning; (3) deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; or (4) episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from the situation or to experience exacerbation of signs or symptoms. Id. Dr. Duque found marked limitations in the latter two criteria. (T. 329.) As such, Plaintiff also meets the "B" criteria of Listing 12.04.

In addition to meeting Listing 12.04, at the administrative hearing, the VE testified that the limitations reflected in Dr. Duque's report would eliminate any jobs that Plaintiff could perform. (T. 446.) Thus, the VE's testimony indicates that, accepting Dr. Duque's opinion with regard to Plaintiff's limitations, there are no jobs that Plaintiff can perform. Given the foregoing, the law dictates that Plaintiff be deemed disabled as a matter of law and awarded benefits. The Court therefore reverses the decision of the Commissioner and remands this case for a determination of Plaintiff's onset of disability date and an award of benefits. Because the Court finds that Plaintiff is disabled it is not necessary to address the issue regarding the ALJ's finding Plaintiff's subjective complaints not fully credible.

CONCLUSION

The ALJ erred in failing to give any reason for discrediting the opinion of Dr. Duque and in crediting the opinion of a non-examining State Agency physician. The Undersigned therefore REVERSES the decision of the Commissioner, and REMANDS this case for a determination of Plaintiff's onset of disability date and an award of benefits. The Court ENTERS judgment in favor of Plaintiff and DIRECTS the Clerk to enter judgment pursuant to Rule 58 and to CLOSE this case.

DATED: August 30, 2005

_____
MARY S. SCRIVEN
United States Magistrate Judge

Copies to: counsel of record